Anthony Agulto Ascura
Register Number 85677-022
Housing Unit A2D
Taft Correctional Institution
Post Office Box 7001
Taft, California 93268-7001

Defendant, "In Propria Persona."

FILED

DISTRICT COURT OF GUAM

AUG 19 2005

MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT

### FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff,<br><br>        v.<br><br>ANTHONY AGULTO ASCURA,<br>                    Defendant. | Case Nos. CV-98-00051-ARM<br>                CR-96-00029-ARM<br><br>**DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT AND ORDER DENYING HIS 28 U.S.C. § 2255 MOTION, PURSUANT TO RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AS AN INDEPENDENT ACTION.** |

COMES NOW the defendant, Anthony Agulto Ascura, acting In Propria Persona, and submits his motion for relief from this Court's judgment and order denying his 28 U.S.C. § 2255 motion on January 15, 1999.

The instant motion is submitted pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure and is filed as an "Independent Action," in light of exceptional circumstances. The defendant submits that relief from this Court's January 15, 1999 order is warranted in light of extraordinary changes in the case-law of the United States Court of Appeals for the Ninth Circuit.

//

//

The defendant asserts that this change in Ninth Circuit case-law mandates relief pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure so as to correct a miscarriage of justice. As a result of this exceptional change in case-law, the defendant asserts further that this Court's January 15, 1999 judgment should not be permitted to stand in good conscience, because he plead guilty and was convicted of an offense which did not fall within the scope of 21 U.S.C. §§ 952,960, or 963. This contention was raised in the defendant's 28 U.S.C. § 2255 motion, and the Ninth Circuit's opinion in <u>United States v. Cabbacang</u>, 332 F.3d 622 (9th Circuit 2003) has made the defendant's contention the correct interpretation of 21 U.S.C. § 952(a) and other relevant statutes concerning charges of unlawful importation of controlled substances.

For the foregoing reasons, the defendant respectfully submits that the relief sought under Rule 60(b)(6) of the Federal Rules of Civil Procedure should be granted, and his conviction should be vacated.

Dated: August 12, 2005          Respectfully Submitted,

Anthony Agulto Ascura
Defendant, In Propria Persona

//
//
//

PRINTED ON
RECYCLED PAPER

# TABLE OF CONTENTS

I. PROCEDURAL HISTORY AND STATEMENT OF THE CASE ......... 1

II. LEGAL DISCUSSION AND ARGUMENT
IN SUPPORT OF GRANTING RELIEF
PURSUANT TO RULE 60(b)(6) OF THE
FEDERAL RULES OF CIVIL PROCEDURE .................... 3

A. Standard of Review ............................... 3

B. This Court's Judgment In Reference
to the Defendant's 28 U.S.C. § 2255 Motion
Was In Error, And Should Not Be Allowed To
Stand In Good Conscience ......................... 7

III. CONCLUSION ......................................... 12

IV. PRAYER FOR RELIEF ................................. 12

//

//

//

i

## TABLE OF AUTHORITIES

**Decisions of the United States Supreme Court**          **Page(s)**

Ackermann v. United States,
 340 U.S. 183,200-202 (1950) ....................... 6

Gonzalez v. Crosby,
 U.S., NO. 04-6432
 (Decision Filed, June 23, 2005) ................... 5

United States v. Beggerly,
 524 U.S. 38,43 (1998) ............................ 12,13

United States v. Granderson,
 511 U.S. 39,54 (1994) ............................ 10

**Opinions of the Courts of Appeals**

Greenawalt v. Stewart,
 105 F.3d 1268,1273 (9th Circuit 1997) ............ 6,7

Hamilton v. Newland,
 374 F.3d 822,825 (9th Circuit 2004) .............. 4,5

Rodwell v. Pepe,
 324 F.3d 66,67,69-71 (1st Circuit 2003) .......... 3

Thompson v. Calderon,
 151 F.3d 918,921 n.3 (9th Cir.)(en banc),
 cert. denied, 524 U.S. 965 (1998) ................ 3

United States v. Alpine Land & Reservoir Company,
 984 F.2d 1047,1049 (9th Circuit 1993) ............ 6

United States v. Cabbacang,
 322 F.3d 622,625 (9th Circuit 2004) .............. Passim

United States v. Garcia,
 672 F.2d 1349,1357-58 (11th Circuit 1982) ........ 9,10

United States v. Ramirez-Ferrer,
 82 F.3d 1131,1137 (1st Circuit 1996) ............. 10

**District Court Ruling**

Harper v. Vaughn,
 272 F.Supp.2d 527,531 (E.D.Pa 2003) .............. 3

//

//

//

**Statutes**                                              **Page(s)**

21 U.S.C. § 841(a)(1) ............................... 1

21 U.S.C. § 846 ..................................... 1

21 U.S.C. § 951(a) .................................. 8

21 U.S.C. § 952 ..................................... 1

21 U.S.C. § 952(a) .................................. Passim

21 U.S.C. § 960 ..................................... 1

21 U.S.C. § 963 ..................................... 1

28 U.S.C. § 2255 .................................... Passim

**Rules**

Fed. R. Civ. Proc. 60(b) ............................ 3,4,5,6

Fed. R. Civ. Proc. 60(b)(6) ......................... 4,5,6

**United States Constitutional Amendments**

U.S.C.A. Const. Amend. 6 ............................ 13

//

//

//

## PROCEDURAL HISTORY AND STATEMENT OF THE CASE

On January 3, 1996, a Grand Jury sitting in the United States District Court for the Territory of Guam, returned an Eight-Count Indictment charging the defendant with various violations of drug importation and trafficking.

On February 15, 1996, a Five-Count Information was filed by the United States Attorney's Office for the Territory of Guam, and that information alleged violations of Title 21 U.S.C. §§ 841(a)(1) and 846 and Title 21 U.S.C. §§ 952,960, and 963. That same day, the defendant plead guilty to Counts One, Two, and Three of the Information which charged him with Conspiracy to Import Methamphetamine and Heroin; Attempted Possession of Methamphetamine With Intent to Distribute; and Attempted Possession of Heroin With Intent to Distribute.

On September 26, 1996, the defendant sought to withdraw his plea of guilty on the basis that the guilty plea had yet to be accepted by this Court, and on October 1, 1996, a hearing was held before Designated District Court Judge, Alfred T. Goodwin. However, the court denied the defendant's motion to withdraw from the plea of guilty, and the court followed the ruling with a memorandum order. The court held that the plea and the plea agreement had been accepted at the February 15, 1996 hearing. The court cited the plea colloquy and held that the defendant and defense counsel understood that the court was adopting the findings of the plea agreement. The court rendered its decision on the defendant's motion to withdraw from the plea of guilty on October 2, 1996, and subsequently sentenced him to 235 months.

-1-

On October 3, 1996, the defendant filed a timely Notice of Appeal. On direct appeal, the defendant alleged that this Court abused its discretion by denying his motion to withdraw from the guilty plea. Consequently, the United States Court of Appeals determined that this contention lacked merit (based on the law of the circuit as it stood then), and affirmed this Court's denial of the motion to withdraw from the plea of guilty. The Ninth Circuit affirmed this Court's judgment in a memorandum order filed on September 8, 1997. A subsequent petition for rehearing was filed by the defendant, however, on January 23, 1998, that petition was denied.

On September 8, 1998, the defendant, acting in pro se, submitted a motion pursuant to 28 U.S.C. § 2255. In that motion, the defendant alleged that the conviction obtained by the plea of guilty was unlawfully induced, and was not made voluntarily or "with understanding of the nature of the charge" and consequence of the plea; and that former defense counsel rendered ineffective assistance. However, this Court denied the 28 U.S.C. § 2255 motion on January 15, 1999.

The instant motion follows, challenging this Court's holding that the defendant's entry into the plea of guilty was made "with understanding of the nature of the charge," when, in fact, subsequent case law of the Ninth Circuit holds that the defendant plead to conduct which does not fall within the scope of the plain language of 21 U.S.C. § 952(a), and other sections of this Title pertaining to the charge of importation of Schedule II Controlled Substances. See: United States v. Cabbacang, 332 F.3d 622 (9th Circuit 2003).

-2-

## II

## LEGAL DISCUSSION AND ARGUMENT

## IN SUPPORT OF GRANTING RELIEF PURSUANT TO RULE 60(b)(6)

## OF THE FEDERAL RULES OF CIVIL PROCEDURE

A. Standard of Review.

For more than half a century, courts have struggled with the issue of when a Rule 60(b) motion brought by a habeas petitioner should be treated as a second or successive 28 U.S.C. § 2255 motion. Within that time, three schools of thought have emerged: some courts have decided that Rule 60(b) motions are never second or successive habeas corpus petitions; others have decided that they always are; and still others have taken a "moderate approach" that proceeds with a case by case examination of the relief sought in the Rule 60(b) motion. See: e.g. Rodwell v. Pepe, 324 F.3d 66,67,69-71 (1st Circuit 2003)(surveying a collective of cases from different circuits addressing this issue); Harper v. Vaughn, 272 F.Supp.2d 527,531 (E.D.Pa. 2003)(addressing the same).

The defendant submits that because the Ninth Circuit has previously observed that there should be no "bright line rule" that every 60(b) motion in a habeas corpus case is to be treated as a second or successive habeas petition (Thompson v. Calderon, 151 F.3d 918,921 n.3 (9th Cir.)(en banc), cert. denied, 524 U.S. 965 (1998), it is among the appellate courts which have taken the "moderate approach."

//

//

//

PRINTED ON
RECYCLED PAPER

Under current precedents of the United States Court of Appeals for the Ninth Circuit, "rule 60(b) is the appropriate rule to invoke when one wishes a court to reconsider claims it has already decided." See: <u>Hamilton v. Newland</u>, 374 F.3d 822,825 (9th Circuit 2004). And as established in the statement of the instant case, the defendant seeks to have this Court reconsider its prior ruling on his 28 U.S.C. § 2255 motion, pertaining to whether he plead guilty with understanding of the nature of the charges against him, based on the fact that a subsequent Ninth Circuit decision held that he plead guilty to conduct which does not fall within the scope of "importation" as defined in 21 U.S.C. § 952(a), among other sections under that Title. Accordingly, the defendant submits that the instant motion should not be treated as an attempt at filing a second or successive habeas corpus petition without obtaining permission from the Ninth Circuit, but should be "evaluated under the ordinary rules governing such motions." <u>Hamilton v. Newland</u>, 374 F.3d at 825.

As established under the "ordinary rules" governing Rule 60(b) motions: A court may relieve a party from a final judgement for one of six reasons. Clauses (1) through (5) provide specific reasons for granting relief, while clause (6) acts as a catch-all allowing the court to grant relief for "any other reason justifying relief from the operation of the judgement." See: Fed. R. Civ. Proc. 60(b). Clauses (1) through (3) cannot be raised more than one year after the entry of judgement, whereas, clauses (4) through (6) must be brought "within a reasonable time." <u>Id</u>.
//

-4-

The defendant respectfully submits that he elected not to bring the instant motion immediately after the Ninth Circuit's decision in United States v. Cabbacang, 332 F.3d 622 (9th Circuit 2003), because the case law of the Ninth Circuit had not been developed enough at the time to support the contention that Rule 60(b)(6) motions filed by habeas petitioners are not an attempt to bring a second or successive 28 U.S.C. § 2255 motion, as long as the motion relates back to issues previously decided in the original § 2255 motion. Furthermore, the defendant elected not to bring the instant motion after the Ninth Circuit's decision in Hamilton v. Newland, 374 F.3d 822 (9th Circuit 2004), because there was still a notable circuit split on the issue as to whether the moderate approach adopted in Hamilton is the proper manner in which to analyze Rule 60(b)(6) motions. The defendant elected to bring the instant motion now, in light of the Supreme Court's adoption of the moderate approach, much as the Ninth Circuit adopted in Hamilton. See: Gonzalez v. Crosby, U.S., No. 04-6432 (Decision Filed, June 23, 2005)(a Rule 60(b) motion is not an attempt to file a second or successive § 2255 motion without obtaining permission from the court of appeals, when the motion relates back to the issues decided in the original habeas petition, and merely challenges the integrity of the proceedings in the district court).

As the instant motion is submitted within two months of the Supreme Court's decision in Gonzalez v. Crosby, the defendant asserts that it is filed within a reasonable amount of time, and thus, in compliance with the plain language of Rule 60(b)(6) of the Federal Rules of Civil Procedure.

-5-

PRINTED ON
RECYCLED PAPER

The defendant further asserts that the instant motion is brought in compliance with the predecessor decisions in both the Ninth Circuit and the Supreme Court. The Ninth Circuit, for example, has held that the provision of Rule 60(b)(6) is to be "used sparingly and as an equitable remedy to prevent manifest injustice." See: United States v. Alpine Land & Reservoir Company, 984 F.2d 1047,1049 (9th Circuit 1993). The Ninth Circuit has also held that a party is entitled to relief under Rule 60(b)(6) where "extraordinary circumstances prevented [him] from taking timely action to prevent or correct an erroneous judgment." See: Greenawalt v. Stewart, 105 F.3d 1268,1273 (9th Circuit 1997) (endemnation added), see also: Ackermann v. United States, 340 U.S. 193,200-202 (1950). Under this reasoning, the defendant respectfully submits that this Court's acceptance of a guilty plea to offense conduct which does not fall within the scope of 21 U.S.C. § 952(a) and other sections under that Title, in relation to the "importation" of Schedule II Controlled Substances, amounts to a "manifest injustice," and the fact that he raised this contention correctly in his § 2255 motion, but this Court did not recognize it at the time, and could not have recognized it until the Ninth Circuit's clarification of the meaning of "importation" as stated in 21 U.S.C. § 952(a)(in Cabbacang), matches the requisites of "extraordinary circumstances" which prevented him from taking "timely action to prevent or correct an erroneous judgement." See: Greenawalt v. Stewart, 105 F.3d at 1273; Ackermann v. United States, 340 U.S. at 200,202.

//

//

-6-

PRINTED ON RECYCLED PAPER

For the reasons stated in the foregoing, the defendant submits that the instant motion presents substantial facts amounting to "extraordinary circumstance[s] that justifies Rule 60(b) relief." See: Greenawalt, 105 F.3d at 1273.

B. This Court's Judgment In Reference to the Defendant's
   28 U.S.C. § 2255 Motion Was In Error, And Should Not Be
   Allowed To Stand In Good Conscience.

As established by the record of proceedings in this Court, pertaining to the defendant 28 U.S.C. § 2255 motion, the defendant raised a contention alleging that he entered into the plea of guilty to the "importation" charges through the erroneous advice of counsel, and that he entered the plea "without understanding of the nature of the charge." See: Memorandum Order Regarding 28 U.S.C. § 2255 Motion, at Page 2, Attached As Exhibit "A". The defendant addressed this issue by citing the plain language of 21 U.S.C. § 952(a) and other statutes entailing "importation" of controlled substances, in his § 2255 motion, and alleged that his conduct did not fall within the scope of the statutes. See: Defendant's Memorandum of Points And Authorities In Support of 28 U.S.C. § 2255 Motion, at Pages 36-41, Exhibit "B". This Court erroneously found the contention to be without merit. See: Memorandum Order, at Page 4, Exhibit "A". However, this Court's finding of no merit predated the Ninth Circuit's opinion in United States v. Cabbacang, 332 F.3d 622 (9th Circuit 2003).

As known to this Court, the Ninth Circuit in Cabbacang held that the transit of drugs through "international airspace" en route form California to Guam, did not constitute "importation" within the meaning of the statute prohibiting importation of drugs into customs territory of the United States "from any place outside

-7-

thereof," and therefore, drugs that pass through international airspace on a nonstop flight en route from one U.S. location to another, without touching down on either land or water, are not "from" a "place outside" the United States for the purpose of the statute. See: Cabbacang, 322 F.3d at 625-634, citing: 21 U.S.C. § 952(a).

The Cabbacang court came to the above cited conclusion upon looking at the language of the statute, itself: Section 952(a) states that "it shall be unlawful [1] to import into the customs territory of the United States, from any place outside thereof (but within the United States), or [2] to import into the United States from any place outside thereof, any controlled substance." Id., at 625, citing: 21 U.S.C. § 952 (emphasis added). Also, the Cabbacang court reviewed Section 951(a), which furnishes the relevant definitions for the terms used in § 952. Section 951(a) defines "import" broadly as "any bringing in or introduction of such article into any area (whether or not such bringing in or introduction constitutes an importation within the meaning of the tariff laws of the United States)." Under the second clause of Section 952(a), the transit of drugs from California to Guam through international airspace, "is insufficient to support a charge of importation under § 952," because such facts clearly demonstrate that drugs were not brought into the United States from a "place outside thereof." Cabbacang, at 625.

//

//

//

-8-

PRINTED ON
RECYCLED PAPER

The facts of the instant case, as described previously in the defendant's 28 U.S.C. § 2255 motion, are that the United States Attorney's Office alleged that the defendant "conspired to import Methamphetamine and Heroin from California and Hawaii into Guam." See: Memorandum of Points and Authorities In Support of 28 U.S.C. § 2255 Motion, at Page 36. These facts clearly illustrate that the flights boarded by the defendant, never landed in foreign territory, although flying over international waters and airspace. In this regard, the Cabbacang court held that "in the ordinary sense of the term ['from any place outside thereof'], drugs do not come from international airspace, although they certainly can move through that space." Cabbacang, 322 F.3d at 626. "Unlike, for example, a foreign nation - which is unquestionably a 'place outside' the United States - international airspace is neither a point of origin nor destination of a drug shipment; it is merely something through which an aircraft must pass on its way from one location to another." Id. "We do not treat passengers who travel through international airspace on a .... flight between two U.S. locations as having crossed our borders (ie., as having entered into the United States from a place outside thereof), and thereby subject to immigration inspections or border searches - as they would be if the flight had originated in a foreign country." Id., comparing: United States v. Garcia, 672 F.2d 1349,1357-58 (11th Circuit 1982)(doubting the validity of a border search of an airplane that traveled through international airspace between two known points of origin and destination within the United States).

//

-9-

In comparison, the Cabbacang court noted the rationale adopted by the Eleventh Circuit in Garcia as follows: "There is no more justification for searching the aircraft or passengers who make such flights than there would be for searching those whose domestic flights do not happen to take them over the ocean on the way." Cabbacang, 332 F.3d at 626, citing: United States v. Garcia, 672 F.2d at 1358. Additionally, the Cabbacang court came to the reasonable conclusion that "were we to ask anyone familiar with the facts of this case from what place [the defendant] brought the drugs into Guam, the answer would be "California" - not "international airspace." Cabbacang, at 627, comparing: United States v. Ramirez-Ferrer, 82 F.3d 1131,1137 (1st Circuit 1996)(en banc)(using the same reasoning in concluding that the term "place," as it is used in § 952(a), does not include in-transit international waters)(endemnation added to the quotation from Cabbacang).

Upon analyzing the structure of 21 U.S.C. § 952(a), the Cabbacang court held that "our analysis leaves little doubt that the second clause of [this section] does not proscribe the transport of drugs on a nonstop flight from one domestic location to another, but to the extent that any doubt remains, the scope of the statute is sufficiently ambiguous to invoke the rule of lenity." Id., at 635. "In these circumstances - where text, structure, and history fail to establish that the Government's position is unambiguously correct - we .... resolve the ambiguity in [the defendant's] favor." See: United States v. Granderson, 511 U.S. 39,54 (1994)(emphasis and endemnation added to the original).

-10-

Under the foregoing authorities, the Cabbacang court reached the conclusion that "the transport of drugs through international airspace on a nonstop flight from one United States location to another, does not constitute importation within the meaning of § 952(a)." Id., at 635. Accordingly, the defendant submits that "the transport of drugs through international airspace," on a flight that originated from California, then landed in Hawaii, and then continued on to Guam, never landing in a foreign country, "does not constitute importation within the meaning of 952(a)," and therefore, his conviction should be vacated, and the case should be remanded for a hearing so as to determine what course of action to take to dispose of this matter. See: e.g. United States v. Cabbacang, 332 F.3d at 637 ("Because the transport of drugs on a nonstop flight from California to Guam does not constitute importation within the meaning of 21 U.S.C. § 952(a), we reverse all three defendants' convictions for conspiracy to import methamphetamine .... [two of the defendants'] convictions for importation of methamphetamine .... and [one defendant's] conviction for attempted importation of methamphetamine).

Under the reasoning adopted in the Cabbacang conclusion, the defendant respectfully submits that a hearing is warranted so that this Court may be able to make a determination as to whether the convictions under Counts Two and Three should stand for Attempted Possession of Methamphetamine and Heroin, in the event where the conviction under Count One for Conspiracy to Import Methamphetamine and Heroin is reversed.

//

-11-

## CONCLUSION

The facts of the instant case clearly show that the defendant raised a proper contention against his conviction to "importation" of controlled substances. The contention raised in the defendant's 28 U.S.C. § 2255 motion paralleled the Ninth Circuit's opinion in <u>United States v. Cabbacang</u>, 332 F.3d 622 (9th Circuit 2003). Therefore, according to the Ninth Circuit's subsequent decision in <u>Cabbacang</u>, the defendant's contention that he entered into the plea of guilty because of counsel's ill advice, and without understanding the charges against him (as to what constitutes "importing into the United States <u>from any place outside thereof</u>"), warrant the relief sought of vacating the conviction. The defendant submits that his plea of guilty to conduct which does not fall within the scope of 21 U.S.C. § 952(a) and other statutes under Title 21 pertaining to "importation" of controlled substances, render both the plea and the conviction, null and void. In summation, the defendant plead guilty and was convicted under conduct which does not constitute violations of 21 U.S.C. §§ 952,960, and 963.

IV

## PRAYER FOR RELIEF

WHEREFORE, the defendant, Anthony Agulto Ascura, prays that this Honorable Court will grant the relief sought in order to correct a manifest injustice. The facts presented herein clearly illustrate that this Court's former judgment in reference to the 28 U.S.C. § 2255 motion should not be enforced in good conscience. See: <u>United States v. Beggerly</u>, 524 U.S. 38,43 (1998)

-12-

(holding that an "independent action" under Rule 60(b)(6) of the Federal Rules of Civil Procedure, may be maintained where the judgement of the district court "should not, in good conscience, be enforced"). The defendant avers that the conviction should be vacated and that a hearing is warranted in order for this Court to determine what course of action to pursue so as to dispose of this matter. All relief sought in the instant motion, comes as a result of the significant Sixth Amendment violation incurred during the October 2, 1996 Sentencing Hearing, unnoticed at the time.

Dated: August 12, 2005                    Respectfully submitted,


                                          Anthony Agulto Ascura
                                          Defendant, In Propria Persona

//

//

//

-13-

# CERTIFICATE OF SERVICE

I, <u>Anthony Agulto Ascura</u> hereby certify that I have served a true and correct copy of the following:

DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT AND ORDER DENYING HIS 28 U.S.C. § 2255 MOTION, PURSUANT TO RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AS AN INDEPENDENT ACTION.

Which is deemed filed at the time it was deposited in Taft Correctional Institution's internal mail system, since TCI has no separate system designed for legal mail, in accordance with Rule 4, Federal Rules of Appellate Procedure and Houston V. Lack, 108 S. Ct. 2379 (1988), by placing same in a sealed, first class postage prepaid envelope addressed to :

Office of the United States Attorney
Sirena Plaza, #500
108 Hernan Cortez Street
Agana, Guam 96910

and depositing same in the institution mail box at Taft Correctional Institution at Taft, California.

I declare, under penalty of perjury (Title 28 U.S.C. § 1746), That the foregoing is true and correct.

Dated this ___12th___ day of ___August___, ___2005___.

_Anthony Agulto Ascura_
Anthony Agulto Ascura
Register Number 85677-022

FILED
DISTRICT COURT OF GUAM

JAN 15 1999

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. Case No. 96-00029 |
| Plaintiff-Respondent, | |
| vs. | |
| ANTHONY AGULTO ASCURA, | **MEMORANDUM ORDER** |
| Defendant-Petitioner. | |

This matter comes before the Court on the Defendant-Petitioner Anthony Agulto Ascura's Petition Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. The petition is DENIED because it is without merit.

I. FACTS

On February 15, 1996, the Defendant pled guilty to an Information charging him with Criminal Conspiracy to Import Methamphetamine and Heroin, Attempted Possession of Methamphetamine with Intent to Distribute, and Attempted Possession of Heroin with Intent to Distribute. On September 26, 1996, defendant sought to withdraw his guilty plea on the basis that the guilty plea had yet to be accepted by the court. On October 1, 1996, a hearing was held before Designated District Court Judge Alfred T. Goodwin. The court denied the Motion at that

**EXHIBIT - "A"**

time, and the court followed the ruling with a Memorandum Order . The court held that the plea and the plea agreement had been accepted at the February 15, 1996 hearing. The court cited the extensive colloquy aimed at insuring that defendant and defense counsel understood that the court was adopting the findings of the plea agreement, as evidence that the plea was knowing and voluntary. Subsequently, defendant was sentenced to 235 months imprisonment.

Defendant Ascura appealed the case to the Ninth Circuit Court of Appeals alleging that the District Court abused its discretion by denying Ascura's motion to withdraw his guilty plea. The Court of Appeals found that this contention lacked merit and affirmed. Defendant now moves under the following grounds:

(1) The conviction obtained by plea of guilty was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and consequence of the plea; and

(2) movant was denied effective assistance of counsel.

II. ANALYSIS

The court has considered the claims of the defendant and finds each to be meritless.

A. THE PLEA OF GUILTY WAS MADE VOLUNTARILY WITH THE NATURE OF THE CHARGE AND THE CONSEQUENCE OF THE PLEA.

Movant argues that his alleged belief that his plea was entered pursuant to Rule 11(e)(1)(A), and not Rule 11(e)(1)(B) makes his plea involuntary. This claim is contrary to the record before the court and legally untenable. This is clearly an effort to reargue his unsuccessful appeal in which he argued that the District Court abused its discretion in not permitting him to withdraw his plea prior to sentencing. Issues resolved against a defendant on direct appeal cannot later be raised again by §2255 petition. See Feldman v. Henman, 815 F.2d 1318 (9th Cir. 1987). Thus, this is not a proper basis for attacking a conviction under §2255.

Were the court to ignore this fatal flaw, the merits of the argument also fail. It is clear

2

from the record that the Movant was fully cognizant of the charges to which he was pleading guilty, the consequences of the plea, the potential penalties associated with the plea, and the court's acceptance of the plea. The court has reviewed the transcript of the plea hearing at issue and notes the important exchanges that transpired as they clearly indicate a knowing and voluntary plea accepted by the court.

At the Plea Hearing the court reviewed the waiver of indictment, and the court read the counts in the information. Transcript of Plea Hearing at 14-17. The defendant answered affirmatively that he had read the plea agreement, had had it explained to him by his attorney, and that he understood it. Transcript at 17. Movant agreed that this was an attorney of his own choosing and he was satisfied with his representation. Transcript at 17. The court emphasized the need for Movant to be of sound mind, to which Movant reiterated that he was fully cognizant of the proceeding. Transcript at 18. Movant represented to the court that the written plea agreement embodied his agreement with the government in its entirety. Transcript at 18. Movant again reiterated that he understood all of the terms of the agreement. Transcript at 19. He understood that, though it was classified as an "A" agreement, the government was under no compulsion to recommend any sentence and the plea was unconditional. Transcript at 19. There was no cooperation requested or required. Transcript at 19-20. Defense attorney clearly stated it was an "A" agreement in that certain charges which would likely have been part of an indictment were omitted from the information. Transcript at 20. The court then warned Movant that this was binding once accepted by the court. Transcript at 20. Movant agreed on the record. Transcript at 20. The court then warned Movant that his sentence might be more than he might hope, and that this was insufficient for him to change his mind and request a trial. Transcript at 20-21. Movant was informed and acknowledged that he was pleading guilty voluntarily and with full knowledge of the consequences. Transcript at 21. The prosecution proposed the factual basis for the plea to which Movant agreed under oath. Transcript at 22-28. The court went

3

over the possible penalties for each conviction. Transcript at 28-29. It was only after this lengthy colloquy that Movant pled guilty to each count. Transcript at 32. The court then "entered" the plea on the record and set the case for sentencing. Transcript at 32. As this record clearly demonstrates, Movant's claim is groundless and the Petition is DENIED.

**B. MOVANT HAS FAILED TO PROVIDE THE BASIS FOR OVERTURNING THE CONVICTION BASED ON INCOMPETENCE OF COUNSEL.**

In order to overturn a conviction for incompetence of counsel, defendant must show that his attorney's representation fell below an objective standard of reasonableness, and that mistakes made by the attorney prejudiced the defense. Strickland v. Washington, 466 U.S. 668 (1984). In the context of a guilty plea, the Movant must show that but for counsel's errors, there would be a reasonable probability that he would not have entered the guilty plea, and would have proceeded to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Defendant has failed to present such a case. He argues that counsel's actions prevented him from making a knowing and voluntary plea. This is refuted by the record. The Petition is therefore DENIED on this basis.

The court DENIES the petition in total, finding it to be meritless and frivolous.

IT IS SO ORDERED.

Dated: January _15_, 1999

_Alex R. Munson_
ALEX R. MUNSON
District Judge

Notice is hereby given that this document was entered on the docket on _1-15-99_.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _Marilyn B Alcon_ _1-15-99_
Deputy Clerk    Date

4

1979), courts have repeatedly stressed the importance of adequate consultation between attorney and client, the interviewing of important witnesses, and adequate investigation of potential defense. See, e.g. <u>Goodwin v. Balkcom,</u> 684 F.2d 794, 804-05 (11th Cir. 1982); <u>United States v. Porterfield</u>, 624 F.2d 122, 124 (10th Cir. 1980); See, <u>Wood v. Zahradnick,</u> 578 F.2d 980, 982 (4th Cir. 1978). Defense counsel performed none of the essential tasks competently resulting in his failure to learn of readily available facts which might have afforded movant a legitimate justiciable defense.

Movant further claims that his counsel failed to conduct adequate legal research into the law and facts surrounding the charges. Movant asserted that if counsel had made adequate legal research, counsel would have learn that movant would have legitimate and potentially viable defenses in the following areas:

### (i) Importation Statute

Under advisement of counsel, movant pleaded guilty to Conspiracy to import Methamphetamine and Heroin in violation of Statute, 21 U.S.C. §§ 952, 960, 963. The charge was based on information filed by the U.S. Attorney's Office that movant conspired to import Methamphetamine and Heroin from California and Hawaii into Guam. Movant contends that he did not violate Statute 21 U.S.C. § 952 because he did not attempt to bring the controlled substance at issue into a "<u>Custom Territory</u>" of the United States from a "place outside thereof." Guam is a "<u>Domestic Territory</u>. The evidence in record only established that movant attempted to bring the controlled substance at issue from one location within the jurisdiction of the United States (Hawaii and California) to another jurisdiction

of the United States (Guam). Government's evidence shows that both the origination and destination of the controlled substance at issue occurred within United States territory. The starting point in statutory interpretation is the language [of the statute] itself. United States v. James, 487 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed. 2d 483 (1986). The government overlooks the fact that the text of section 952(a) includes a separate clause not directly at issue in this case. With this separate clause included section 952(a), entitled "Importation of Controlled Substance," provided:

> [It] shall be unlawful [1] to import into the customs territory of the United States from any place outside thereof (but within the United States), or [2] to import into the United States from any place outside thereof, any controlled substance.

Given proper interpretation of 21 U.S.C. §952(a), transport from one part of the United States to another part of the United States does not rise to the level of importation simply by involving travel through international waters or airspace. The government relied on its reading, any shipment into Guam, a U.S. domestic territory that must pass through international waters or airspace would be punishable under clause 2 of section 952(a). However, section 952(a) itself requires that the importation into the United States be "from any place outside thereof." The word place in section 952(a), when read together with "from....outside," needs to be considered in the present circumstances, not just the word "import." The definition of "import" (any bringing in) appearing in section 951 does not implicate the origin of shipment of drugs. Government's reading is that any shipment into the United States,

which in this case, Guam, must pass through international waters or airspace is punishable under clause 2 of section 952(a). The government's interpretation rest on the assumption that congress intended to focus only on a result (i.e., each introduction of the drugs into the United States), irrespective of whether its place of origin was another part of the United States. But if this were the case, Congress would not have proscribed importation from any place outside thereof, "but merely importation into the United States", omitting any mention of a place of origin. Furthermore, It should also consider the following test of the "plain meaning" of the word "place" in section 952(a). Should anyone be asked, "from what place was the illegal substance coming from?" would answer, "from Hawaii and California," not as interpreted by the government, "from international waters." Failure to comport with the normal understanding of the word "place", the government inter- pretation of clause 2 cannot be reconciled with any reasonable reading of clause 1. Clauses 1 and 2 were enacted simultaneously in 1970. If the phrase in clause 2 - "place outside thereof" refers to the location of the drugs immediately before they pass through the "transparent curtain" into U.S. territory, it must be given the same cannotation in clause 1 absent an indication that congress intended otherwise. See Atlantic Cleaners v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 608-09, 76 L.Ed. 1204(1932) (noting presumption that a word or phrase used more than once in statute has same meaning); Fortin v. Marshall, 608 F.2d 525, 528, (1st Cir 1979). A close analysis of section 952(a) reveals that the government's broad interpretation of clause 2 would both render

clause 1 superfluous and make it technically impossible to violate.
First, clause 1 proscribes the importation of illegal drugs into
the customs territory of the United States from a place outside
the custom territory of the United States. The "customs territory
of the United States" is defined as "the States, District of
Columbia and Puerto Rico." See Harmonized Tariff Schedule of the
United States, n.2. Thus, clause 1 proscribes from any other U.S.
territories not within the customs territory (e.g., U.S Virgin
Islands, Guam) into "the states, the District of Columbia, and
Puerto Rico." Movant believed that with proper interpretation
of clause 1, movant did not violate the statute as charged. As
proscribed by the Harmonized Tariff Schedule of the United States,
Guam is not part of the the "customs territory" group, nor did
movant violate clause 2. Clause 2 proscribes "to import into the
United States from any place outside thereof, any controlled
substance." The phrase "any place outside thereof" assuredly
includes international waters. See United States v. Goggins 853
F.2d 843, 845 (11th Cir. 1988) If drugs were manufactured on a
ship at sea or found floating on a raft on international waters and
were brought into shore by boat, that would be an importation from
a place outside the United States. The juxtaposition of "places"
and "water" in section 802(28) was almost surely a precautionary
redundancy. As for the term "import" absent a statutory definition,
the common cannontation of foreign country origin might prevail.

Under statute prohibiting importation of drugs into the United
States, transport from one part of the United States to another
part of the United States does not rise to the level of importation

simply by involving travel through international waters or airspace. Comprehensive Drug Abuse Prevention and Control Act of 1970 § 1002(a), 21 U.S.C.A. §952(a). It is far from clear whether a scheduled non-stop airline flight between two U.S. points, in this case, Hawaii to Guam, a domestic territory could ever be treated as importation under the main clause of section 952. For practical purposes, drugs on such a flight are never outside the country regardless whether the aircraft is a U.S. Carrier or not.

At anytime an aircraft enters international airspace, that flight is considered to be international flight. The government had the courts believe that throughout the life of this statute which has been on the books in practically the same form since 1970, in every direct flight, commercial or private, between, say, the mainland and Puerto Rico or the mainland and Hawaii or Alaska, or vice versa or even between Maimi and New York, or Nantucket, Massachusetts and Boston, all of whom at some point fly within international airspace before returning to Domestic Territory, the occupants have always been subject to being charged under this hitherto overlooked definition of importation.

In a similiar case with the instant case, See United States v. Cruz, 127 F.3d 791 (9th Cir. 1997), defendants in Cruz conspired to bring Methamphetamine from California to Guam. The courier, Peter Balajadia was intercepted in Honolulu, Hawaii by Police Detectives. Balajadia cooperated where several telephone calls were made to Guam in which a Billy Cruz proceeded to Honolulu, Hawaii to retrieve and bring the controlled substance into Guam. The facts indicated that the controlled substances originated in

California, transported to Hawaii through international flights passing through international airspace and was to continue on to Guam. Defendants on that case were charged for violation of 21 U.S.C. §§ 846 andd 841(a). None of the defendants were charged with the "Conspiracy to Import" statutes.

In the instant case, Movant asserts that if counsel would have made adequate research into this statute, counsel would have found a potential and viable defense, favorable to movant. Counsel's failure to adequately research the "importation" statute prejudiced movant,s defense.

Movant claims that what is before this court is the tacit recognition that such acts could not reasonably be considered "Importation" within 952(a) and since 952(a) was the object of the "Conspiracy" statute, movant prays that the court grant movant relief from such charge.

### (ii) Entrapment by Outrageous Government Conduct

Movant claims that he received ineffective assistance of counsel because his counsel failed to investigate and pursue an "entrapment by "outrageous government conduct"" defense. Citing United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed. 2d 366 (1973), "we may some day be presented with a situation in which the conduct of Law Enforcement Agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction...." In the instant case, movant contends that the government should ultimately be held accountable for insti- gation of the crime.